[Cite as *State v. Shmigal*, 2023-Ohio-134.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No. 29807 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DANIEL SHMIGAL | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 19 03 1086 |

DECISION AND JOURNAL ENTRY

Dated: January 18, 2023

SUTTON, Judge.

{¶1} Defendant-Appellant Daniel Shmigal appeals the judgment of the Summit County Court of Common Pleas. For the reasons that follow, this Court affirms.

I.

**Relevant Background Information**

{¶2} Mr. Shmigal was indicted on twelve counts, including four counts of felonious assault, in violation of R.C. 2903.11(A)(1)/(A)(2), felonies of the second degree; one count of failure to stop after an accident, in violation of R.C. 4549.02(A)(3), a misdemeanor of the first degree; four counts of murder, in violation of R.C. 2903.02(A)/(B)/(D) and R.C. 2929.02(B)/(D)(1), unclassified felonies; one count of aggravated vehicular homicide, in violation of R.C. 2903.06(A)(1)(a)/(B)(2)(b)(i), a felony of the first degree; one count of aggravated vehicular assault, in violation of R.C. 2903.08(A)(1)(a)/(B)(1)(a), a felony of the second degree;

and one count of vehicular assault, in violation of R.C. 2903.08(A)(2)(b)/(C)(2), a felony of the third degree.

{¶3} Initially, Mr. Shmigal pleaded not guilty by reason of insanity on all counts and requested a competency evaluation and a "psychiatric evaluation of his sanity at the time of the offense." The trial court ordered an examination of Mr. Shmigal by the Psycho-Diagnostic Clinic to determine whether Mr. Shmigal was competent to stand trial and further determine Mr. Shmigal's mental condition at the time of the commission of the charged offenses. Upon receiving copies of the reports issued by the Psycho-Diagnostic Clinic regarding its examination of Mr. Shmigal for competency and his mental state at the time of the charged offenses, the State and Mr. Shmigal, through counsel, stipulated to the results of both reports. Additionally, the trial court found, based upon the Psycho-Diagnostic Clinic report and other evidence, Mr. Shmigal "did not have a severe mental disease or defect that resulted in him not knowing the wrongfulness of the acts charged." Thus, the trial court determined Mr. Shmigal was sane at the time he committed the offenses and did not allow him to proceed with his plea of not guilty by reason of insanity.

{¶4} Mr. Shmigal retracted his plea of not guilty, by written plea agreement and in open court, and entered a plea of guilty to one count of murder, in violation of R.C. 2903.02(B)/(D)1), an unclassified felony, and one count of aggravated vehicular assault, in violation of R.C. 2903.08(A)(1)(a)/(B)(1)(a), a felony of the second degree. The trial court sentenced Mr. Shmigal to an agreed term of fifteen years to life imprisonment for murder and eight years imprisonment for aggravated vehicular assault, to be served concurrently, for a total agreed sentence of fifteen years to life. Further, the trial court waived all fines and outstanding court costs and advised Mr. Shmigal he must register with the Violent Offender Database upon release from prison and will be

supervised on post-release control for a mandatory period of three-years. The remaining ten counts in the indictment and supplemental indictment were dismissed.

{¶5} Mr. Shmigal now appeals raising two assignments of error for our review. We consolidate Mr. Shmigal's assignments of error in order to facilitate our analysis.

II.

### ASSIGNMENT OF ERROR I

**[MR. SHMIGAL] DID NOT ENTER A CHANGE OF PLEA KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY.**

### ASSIGNMENT OF ERROR II

**[MR. SHMIGAL] WAS DENIED HIS RIGHT TO DUE PROCESS AND OF ASSISTANCE OF COUNSEL AS GUARANTEED BY THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTIONS 10 AND 16 OF THE OHIO CONSTITUTION BECAUSE HIS TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE.**

{¶6} In his two assignments of error, Mr. Shmigal argues he did not enter a change of plea knowingly, intelligently and voluntarily, based, in large part, upon the alleged ineffectiveness of his trial counsel. Mr. Shmigal further asserts "minimal inquiry" was made from the trial court regarding Mr. Shmigal's mental health, medications, and hospital stays, which should invalidate his guilty plea. For the following reasons, this Court disagrees.

### Crim. R. 11

{¶7} "A criminal defendant's choice to enter a guilty plea is a serious decision." *State v. Blouir*, 9th Dist. Summit No. 30066, 2022-Ohio-1222, ¶ 12, quoting *State v. Bishop*, 156 Ohio St.3d 156, 2018-Ohio-5132, ¶ 10, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 25. "Due process requires that a defendant's plea be made knowingly, intelligently, and voluntarily; otherwise, the defendant's plea is invalid." *Id*.

**{¶8}** In felony cases, the Supreme Court of Ohio has indicated:

Crim.R. 11(C) prescribes the process that a trial court must use before accepting a plea of guilty to a felony. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, ¶ 8. The trial court must follow certain procedures and engage the defendant in a detailed colloquy before accepting his or her plea. [*State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, ¶ 26]; *see* Crim.R. 11(C). The court must make the determinations and give the warnings that Crim.R. 11(C)(2)(a) and (b) require and must notify the defendant of the constitutional rights that Crim.R. 11(C)(2)(c) identifies. *Veney* at ¶ 13. While the court must strictly comply with the requirements listed in Crim.R. 11(C)(2)(c), the court need only substantially comply with the requirements listed in Crim.R. 11(C)(2)(a) and (b). *Id*. at ¶ 18.

*Bishop* at ¶ 11. Specifically, Crim.R. 11(C) states:

(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally either in-person or by remote contemporaneous video in conformity with Crim.R. 43(A) and doing all of the following:

(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶9}** "'Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect.' To demonstrate prejudice in

this context, the defendant must show that the plea would otherwise not have been entered." *Veney* at ¶ 15, quoting *State v. Nero*, 56 Ohio St.3d 106, 108 (1990).

{¶10} Here, the following plea colloquy transpired between Mr. Shmigal and the trial court:

\* \* \*

THE COURT: Okay. So, Mr. Shmigal, in Count 8, you are charged with murder, an unclassified felony. The sentence is 15 years to life. There is a fine.

[MR. SHMIGAL]: $15,000?

THE COURT: How much?

[MR. SHMIGAL]: $15,000?

THE COURT: No.

[THE STATE]: I know it is $20,000 for an FI, Judge. I don't know if it goes up beyond that for an unclassified felony. We'd have no objection to waiving that.

THE COURT: Yes, I think there is a $20,000 maximum fine. \* \* \* The murder has the \* \* \* Violent Offender Registration requirement. Did [your counsel] talk to you about all that? When you get out of prison \* \* \*.

[MR. SHMIGAL]: Yes.

THE COURT: \* \* \* you'll be required to keep your \* \* \* [.]

[MR. SHMIGAL]: Registration.

THE COURT: \* \* \* registration for your whereabouts. There is an aggravated vehicular assault. That is a Felony 2. You could get up to eight years in the penitentiary with a fine of up to $15,000.

[THE STATE]: Judge, I don't know if that one has the registration as well, but they would obviously be concurrent.

THE COURT: Yeah. There is a mandatory driver's license suspension of a minimum of three years maybe to life.

[THE STATE]: I believe it is to life.

THE COURT: Okay. And on that charge, when you get out of prison, you'll be on post-release control, which is like parole. And if you violate the rules of the parole board, you could go back to prison for up to half of your original sentence.

If I don't waive them, which I will, you will have court costs to pay as well, but if you can't pay those, you could do community service. You could work them off even from inside the institution. Do you understand the charges and all of the possible penalties?

[MR. SHMIGAL]: Yes, ma'am.

THE COURT: So, you have signed the plea agreement?

[MR. SHMIGAL]: Yes, ma'am.

THE COURT: Did [your counsel] go over it and explain everything and answer all of your questions?

[MR. SHMIGAL]: Yes, ma'am.

THE COURT: So you know you are giving up the right to a jury trial?

[MR. SHMIGAL]: Yes, ma'am.

THE COURT: You are giving up the right to make the prosecutor prove these charges against you beyond a reasonable doubt.

[MR. SHMIGAL]: Yes, ma'am.

THE COURT: You are giving up the right to have your lawyers subpoena and cross-examine witnesses for you. You are giving up the right to testify, and you also have the right not to testify on your own defense.

[MR. SHMIGAL]: Yes, ma'am.

THE COURT: You are giving up the right to appeal on this case.

[MR. SHMIGAL]: Yes, ma'am.

THE COURT: Do you understand that? * * * [y]ou will be supervised by the parole board for a mandatory period of three years. * * * Mr. Shmigal, do you understand all of that?

[MR. SHMIGAL]: Yes, ma'am.

THE COURT: Tell me how you plead to Count 8, which was the murder?

[MR. SHMIGAL]: Guilty.

THE COURT: And then Count 11, which is the aggravated vehicular assault?

[MR. SHMIGAL]: Guilty.

THE COURT: I will take your pleas knowingly, intelligently and voluntarily made, and I will find you guilty of both those counts, and I will dismiss the balance of the rest of the indictment.

\* \* \*

{¶11} The written plea of guilty form, signed by Mr. Shmigal, also notified Mr. Shmigal of the maximum prison terms, maximum fines, presumed prison time, and driver's license suspension. Additionally, Mr. Shmigal acknowledged he understood, and waived, his constitutional rights to a jury trial, to confront and cross-examine witnesses, to subpoena witnesses to testify in his favor, and to have the State prove his guilt beyond a reasonable doubt at a trial where he could not be compelled to testify against himself. Mr. Shmigal also acknowledged, by pleading guilty, he waived his right to appeal any issues that might have been raised had he gone to trial. Further, Mr. Shmigal acknowledged:

> I have been fully advised by my attorney of the Criminal Rule 11(F) plea negotiations which have also been stated in open court and I accept those negotiations as my own. I understand the nature of these charges and the possible defenses I might have. I am satisfied with my attorney's advice and competence. I am not under the influence of drugs or alcohol. No threats have been made to me. No promises have been made except as part of this plea agreement stated entirely as follows: parties recommend concurrent sentences. I further understand that the [State's] recommendation does not have to be followed by the [c]ourt.

(Emphasis in original.) Mr. Shmigal also acknowledged, by pleading guilty, he committed the offenses and would "tell the [c]ourt the facts and circumstances of [his] guilt," which allowed the trial court to either immediately impose sentence or refer the case for a presentence investigation.

{¶12}    Based upon this record, the trial court strictly complied with Crim.R. 11I(2)(c) by notifying Mr. Shmigal of his constitutional rights as identified in Crim.R. 11(C)(2)(c). Additionally, in considering the totality of the circumstances, the trial court substantially complied with the requirements listed in Crim.R. 11(C)(2)(a) and (b).  Mr. Shmigal engaged in a colloquy with the trial court regarding the nature of the charges and the maximum penalties involved, including fines, driver's license suspension, and registry in the Violent Offender database.  The trial court also advised Mr. Shmigal he would be supervised under post-release control for a mandatory term of three-years on the aggravated vehicular assault charge.  Mr. Shmigal orally indicated he understood the charges and possible penalties as well as the constitutional rights he was waiving by pleading guilty.

{¶13}    Moreover, the written plea of guilty form advised Mr. Shmigal of the same. In signing the written plea of guilty form, Mr. Shmigal acknowledged he was not under the influence of drugs or alcohol at the time of the plea.  Further, the written plea of guilty form advised Mr. Shmigal of the effect of the guilty plea and that he could be immediately sentenced upon the trial court's finding of guilt.[1]   During the plea colloquy, Mr. Shmigal acknowledged his counsel explained the written plea of guilty form and answered all of his questions regarding the same. Further, Mr. Shmigal has not demonstrated prejudice.

{¶14}    Accordingly, Mr. Shmigal's first assignment of error is overruled.

### Ineffective Assistance of Counsel

{¶15}    Additionally, "[t]his Court has held that [a] guilty plea is not voluntary if it is the result of ineffective assistance of counsel." (Internal quotations and citation omitted.) *State v.*

---

[1] We note, although the trial court did not *orally* advise Mr. Shmigal of the effect of the guilty plea and the chance of being immediately sentenced during the plea colloquy, Mr. Shmigal was not prejudiced because the trial court, in fact, sentenced Mr. Shmigal at a later time.

*Bravo,* 9th Dist. Summit No. 27881, 2017-Ohio-272, ¶ 7. "[I]n Ohio, a properly licensed attorney is presumed competent." *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 62. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland v. Washington*, 466 U.S. 668, 689 (1984).

{¶16} "This Court uses a two-step process as set forth in *Strickland, supra*, to determine whether a defendant's right to the effective assistance of counsel has been violated." *Bravo.* at ¶ 8. Importantly:

> [w]hen the *Strickland* test is applied to guilty pleas, the defendant must first show that counsel's performance was deficient. Next, the defendant must show that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty. [T]he mere fact that, if not for the alleged ineffective assistance, the defendant would not have entered the guilty plea, is not sufficient to establish the necessary connection between the ineffective assistance and the plea; instead, the ineffective assistance will only be found to have affected the validity of the plea when it precluded the defendant from entering the plea knowingly and voluntarily.

(Internal quotations and citations omitted.) *Id*. at ¶ 9, *quoting State v. Gegia*, 157 Ohio App.3d 112, 2004-Ohio-2124, ¶ 17 (9th Dist.). Further, as to the second prong of *Strickland*, that there is a reasonable probability that but for counsel's errors, he would not have pleaded guilty, a defendant "must do more than present post hoc assertions * * * about how he would have pleaded but for his attorney's deficiencies." *State v. Romero*, 156 Ohio St. 3d 468, 2019-Ohio-1839, ¶ 28. (Internal quotation and citation omitted.). Moreover, "[t]he Ohio Supreme Court has recognized that a court need not analyze both prongs of the *Strickland* test, where the issue may be disposed upon consideration of one of the factors." *Bravo* at ¶ 10.

{¶17} Here, Mr. Shmigal specifically argues his counsel was ineffective for failing to request another psycho-diagnostic evaluation regarding competency and sanity, failing to explore other possible defenses based upon Mr. Shmigal's history of mental health, failing to utilize an

expert witness regarding Mr. Shmigal's mental state, and failing to provide Mr. Shmigal with "additional explanation[s] than an average person." For the reasons that follow, this Court is not persuaded by Mr. Shmigal's arguments.

{¶18} The record reveals that prior to Mr. Shmigal pleading guilty, counsel stated as follows:

> Judge, [co-counsel] and I have spent a great deal of time [on] the case with [Mr. Shmigal].
>
> * * *
>
> [T]his [c]ourt has conducted two psychiatric evaluations of [Mr. Shmigal].[2] Once, regarding his mental status at the time of the offense; secondly, a mental evaluation regarding his present ability to counsel his own defense, and those have been conducted by our psycho[-]diagnostic clinic, and the results of that has been shared with us and the [State].
>
> In addition to that, I have gathered records from when [Mr. Shmigal] was three-years-old, [and] when he was in his early teens three years ago, all with the view towards looking to the applicability of the blackout defense as has been authorized by our State Supreme Court a couple of years ago, which would basically offer a complete and total defense to a crime for an individual who has a dissociative event where through a disease or injury or some kind of psychiatric condition[,] [h]e has no recollection of the events. He really does not know what occurred.
>
> * * *
>
> So [co-counsel] and I have gone through all of the records that we find. Although he was actually diagnosed when he was three years old with PTSD[,] [t]hat was as a result of some abuse that he underwent. The other hospitalizations that occurred when he was in his early teens and occurred a few years ago did not reinforce that finding. In fact, they had found that there is no evidence of PTSD in his events which occurred in his early teens and another event that occurred about three years ago; so we didn't have a diagnosis of PTSD that we can rely upon.
>
> Although one of the reports actually did reinforce the PTSD diagnosis from early on, but it did so only because it couldn't find any legitimate reason to not do that. They were unable to determine either way.

---

[2] The psycho-diagnostic reports were not made part of the record on appeal.

In addition to that, there [is] some factual evidence in this case where there [is] a witness or witnesses who will testify, as I understand it, that [Mr. Shmigal] made some comments after the event that basically would be * * * incongruous with such a defense that do not support the fact that this was a dissociative event.

So for all of those reasons, we have talked to [Mr. Shmigal] and talked to his wife and decided among ourselves that we ought to try to resolve the case.

We then began doing this process a couple of months ago initially and then in earnest over the last two or three weeks.

* * *

And * * * [Mr. Shmigal] approves what we put in this [c]ourt's plea form where we are recommending concurrent sentences between * * *murder * * * and aggravated vehicular assault, that those sentences run concurrently.

* * *

So that being said, Your Honor, [Mr. Shmigal] has instructed me at this time that he wishes to withdraw his former pleas of not guilty that he has entered on these two counts * * * and enter a plea of guilty to both * * * counts.

{¶19} This Court has previously stated: "[s]trategic trial decisions are left to the deference of trial counsel and are not to be second-guessed by appellate courts." *State v. Granakis*, 9th Dist. Wayne No. 15AP0053, 2017-Ohio-8428, ¶ 29, quoting *State v. Miller*, 9th Dist. Summit No. 23240, 2007-Ohio-370, ¶ 10, citing *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). The record reflects Mr. Shmigal's counsel after: (1) consideration of the psycho-diagnostic reports; (2) review of previous medical records dating back to when Mr. Shmigal was three-years old; (3) consideration of statements allegedly made by Mr. Shmigal after he committed the offenses; and (4) several discussions with Mr. Shmigal, and Mr. Shmigal's wife, chose not to seek further psychiatric testing or pursue the blackout defense. These decisions fall squarely within the category of trial strategy. Further, Mr. Shmigal has only provided this Court with pure speculation as to what benefit, if any, additional testing, an expert witness, and certain defenses could provide. However, this Court "will not engage in speculation in analyzing a claim of ineffective assistance

of counsel * * *." *Granakis* at ¶ 30; *see also State v. Johnson*, 1st Dist. Hamilton No. C-030643, 2004-Ohio-3624, ¶ 20-21 ("we refuse to second-guess counsel's trial strategy in light of the scant evidence in the record to suggest that [Mr.] Johnson did not know, as a result of a severe mental disease or defect, the wrongfulness of his crime. We conclude that [Mr.] Johnson's argument is too speculative, and that he has not demonstrated that there is a reasonable probability that an additional expert evaluation would have changed the result of his case.")

{¶20}   Mr. Shmigal has not demonstrated deficient performance by his trial counsel or any resulting prejudice.

{¶21}   Accordingly, Mr. Shmigal's second assignment of error is overruled.

### III.

{¶22}   For the foregoing reasons, Mr. Shmigal's two assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

————

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

KIMBERLY STOUT-SHERRER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.